**Karen K. POYSER, Appellant–Plaintiff,**

v.

**David PEERLESS, Claudia Hilligloss, Karen K. Dorfman, St. Richard's School Foundation, Inc., d/b/a St. Richard's School and St. Richard's Board of Directors, Appellees–Defendants.**

No. 49A05–0108–CV–352.

Court of Appeals of Indiana.

Aug. 15, 2002.

Publication Ordered Sept. 12, 2002.

Kevin W. Betz, Mark J. Pizur, Sutherlin & Betz, Indianapolis, IN, Attorneys for Appellant.

Thomas E. Wheeler, Locke Reynolds, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Karen Poyser filed a defamation lawsuit against St. Richard's School, her former employer, David Peerless and Claudia Hilligoss, her supervisors at the school, the St. Richard's Board of Directors, and Karen Dorfman, president of the Board (col-lectively referred to as "the School"). The School moved for summary judgment, which motion was granted by the trial court. Poyser now appeals the summary judgment against her. We affirm.

*Issues*

Poyser raises three issues for our review, which we consolidate and restate as one: whether the trial court properly granted summary judgment to the School on finding that the statements the School made in a letter to the School community about Poyser's departure from the School were true, were made without malice, or were protected by the common interest privilege.

*Facts and Procedural History* [1]

Karen Poyser was employed beginning in 1991 as a second-grade teacher at St. Richard's School, a private Episcopal grade school in Indianapolis. While Poyser was employed at St. Richard's, her ultimate supervisor was the Headmaster, David Peerless. Her immediate supervisor at the relevant time was Claudia Hilligoss, the "Lower School Head." Poyser and Hilligoss experienced "communication difficulties" in their dealings with one another. Poyser did not sign and return her contract for the 1999–2000 school year, but she did begin teaching that fall. In September of 1999, Poyser composed a letter to Peerless explaining her complaints and concerns about the school administration and Hilligoss in particular. She indicated in her letter that she was "considering turning in [her] resignation." Appellant's Appendix at 255. She requested a meeting with Peerless at his convenience, and sent a copy of the letter to Hilligoss and to the St. Richard's Board of Directors.

---

1. We heard oral argument on this case on July 1, 2002, in Indianapolis, Indiana. We thank counsel for their presentations.

After Peerless received this letter, he directed Hilligoss to meet with Poyser to try to resolve their difficulties and he sent a letter to Poyser informing her that she should follow the chain-of-command and attempt resolution first with Hilligoss before he became involved. Appellant's Appendix at 257. Because Hilligoss was reluctant to meet one-on-one with Poyser due to their past difficulties, Peerless ultimately agreed to attend a meeting between the two. Hilligoss e-mailed Poyser on September 22, 1999, and informed her that she had scheduled a meeting for the two of them that afternoon, that Peerless would also attend, and that arrangements had been made to cover her classroom during this time. Appellant's Appendix at 258. Poyser responded by e-mail that the meeting was not at a good time for her and that she would not meet with Hilligoss and Peerless at the same time. Appellant's Appendix at 259. Hilligoss responded by e-mail that "the issues you raised in your letter are serious enough to require a meeting" that afternoon, and that she and Peerless expected her to meet with them as scheduled. Appellant's Appendix at 260. Poyser did not attend the meeting. Peerless sent an e-mail that afternoon informing Poyser that her failure to attend the meeting was a serious violation, scheduling another meeting for the morning of September 24, and asking her not to discuss the issue "in any way that negatively affects the school's reputation, ability to function smoothly, or the quality of the working conditions." Appellant's Appendix at 262.

That evening was the school open house, and following her presentation to the parents of her students, one of whom was a Board member, Poyser answered questions regarding her employment situation at the school and read to them parts of her letter to Peerless and his response. At the September 24 meeting, Peerless informed Poyser that her actions, both in failing to attend the September 22 meeting and in talking with parents about her situation, were insubordination and grounds for termination. Poyser responded that he could not terminate her because she had never turned in her contract and that she was resigning. However, she refused to discuss her resignation further with Hilligoss in the room. Peerless then asked that she turn in her key to the school and he escorted her from the school.

Peerless informed the Board that Poyser was no longer teaching at the school. He prepared a letter that was sent to the parents of Poyser's former students addressing Poyser's departure but declining to share details "[a]s it was an internal personnel issue." Appellant's Appendix at 265. He also prepared a general notice that was sent to the parents of all St. Richard's students concerning Poyser's departure and stating that the "decision was the conclusion of a normal personnel process for these matters. The School policy, in evaluating any employee, is to treat the details with confidence." Appellant's Appendix at 266. Thereafter, parents of some of Poyser's former students contacted the school concerning Poyser's departure.

At the next regularly scheduled Board meeting, the Board addressed the apparent discrepancy between Poyser's position that she had resigned from St. Richard's and Peerless' position that he had terminated her employment. To address concerns that Peerless had violated school policies and procedures in his handling of Poyser's departure and to end the discord in the school community over the situation, the Board formally addressed Poyser's departure by sending a letter from the Board to all St. Richard's parents. After speaking with Peerless, Karen Dorfman, the president of the Board, composed and signed the letter, which reads in part:

There has been much speculation as to the circumstances surrounding Mrs. Poyser's departure from St. Richard's. For the privacy of its employees, St. Richard's makes every effort to maintain confidentiality with respect to personnel issues. However, in this case, there seems to be a general misunderstanding as to what occurred. The incidents surrounding Mrs. Poyser's departure were instigated by her and not her supervisor, Mrs. Hilligoss. The Administration attempted to address Mrs. Poyser's concerns within the School's published guidelines and policies. It was only after Mrs. Poyser ignored School policies and the Administration's directives, and refused to meet with the Administration to resolve her concerns, that the School decided to terminate her contract.

Appellant's Appendix at 267.

Poyser thereafter initiated a lawsuit against Peerless, Hilligoss, Dorfman, St. Richard's School, and St. Richard's Board of Directors, alleging that they had defamed, slandered and libeled her through the publication of Peerless' notices regarding her termination and Dorfman's above-quoted letter. The School moved for summary judgment, alleging that the statements made were true, there was no evidence of malice in the making of the statements, and the School was protected by the "common interest privilege." Poyser opposed the motion. Following a hearing, the trial court granted the School's motion for summary judgment:

... Mrs. Poyser's claims fail as a matter of law for three reasons: (1) Mrs. Poyser has not demonstrated a *prima facie* case as the undisputed facts demonstrate that the allegedly defamatory statements were true ...; (2) Mrs. Poyser has not shown a *prima facie* case as the undisputed facts demonstrate that there was no malice ...; and, (3) the comments were protected by the common interest privilege as parents and

schools have "corresponding interests" in the free flow of information about teachers, the school environment, and the education of children....

Appellant's Appendix at 129–30 (citations omitted). Poyser now appeals.

*Discussion and Decision*

I. Standard of Review

■ Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *I/N Tek v. Hitachi Ltd.,* 734 N.E.2d 584, 586 (Ind.Ct.App.2000), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman,* 725 N.E.2d 425, 428 (Ind.Ct.App. 2000), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

■ On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Interstate Cold Storage v. General Motors Corp.,* 720 N.E.2d 727, 730 (Ind.Ct. App.1999), *trans. denied.* We do not re-

weigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang v. Hansford,* 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

## II. Defamation

■■■■ Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron,* 716 N.E.2d 29, 37 (Ind.Ct.App. 1999), *trans. denied.* To establish defamation, the plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Ratcliff v. Barnes,* 750 N.E.2d 433, 436 (Ind.Ct.App. 2001), *trans. denied.* In general, the determination of whether a communication is defamatory is a question of law for the court. *Dietz v. Finlay Fine Jewelry Corp.,* 754 N.E.2d 958, 968–69 (Ind.Ct. App.2001). The determination becomes a question of fact for the jury if the communication is reasonably susceptible of either defamatory or non-defamatory interpretation. *Ratcliff,* 750 N.E.2d at 436. However, a communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a

person's trade, profession, office, or occupation; or (4) sexual misconduct. *Levee v. Beeching,* 729 N.E.2d 215, 220 (Ind.Ct. App.2000). Damages are presumed even without proof of actual harm to the plaintiff's reputation if the communication is defamatory per se. *Rambo v. Cohen,* 587 N.E.2d 140, 145 (Ind.Ct.App.1992), *trans. denied.*

The trial court determined that Poyser had not stated an actionable claim for defamation for three reasons: the allegedly defamatory statements were true, they were made without malice, and they were protected by the "common interest" privilege. Poyser contends that the trial court erred in granting summary judgment to the School on all three grounds. We note that any one of the grounds recited by the trial court is sufficient to defeat Poyser's defamation claim and support summary judgment for the School.

### A. The Statements

Poyser contends that the following statements from Dorfman's letter were defamatory:

1. "The incidents surrounding Mrs. Poyser's departure were instigated by her and not her supervisor, Mrs. Hilligoss."

2. "The Administration attempted to address Mrs. Poyser's concerns within the School's published guidelines and policies."

3. "... Mrs. Poyser ignored School policies and the Administration's directives...."

4. "Mrs. Poyser ... refused to meet with the Administration to resolve her concerns...."

5. "... the School decided to terminate her contract."

The evidence the parties designated for summary judgment purposes consists primarily of the communications described in

the *Facts* section above and of the deposition testimony of the principal players.

### B. Malice

A private individual bringing a defamation action must show "actual" malice in matters of public or general concern. *Ratcliff,* 750 N.E.2d at 437. *See also Journal-Gazette Co., Inc. v. Bandido's, Inc.,* 712 N.E.2d 446, 452 (Ind.1999), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999) (expressly adopting *Aafco Heating and Air Conditioning Co. v. Northwest Publications, Inc.,* 162 Ind. App. 671, 321 N.E.2d 580 (1974), *cert. denied,* which applied the actual malice standard for both public *and* private individuals). Actual malice must be shown by clear and convincing evidence. *Bandido's,* 712 N.E.2d at 456. The question of whether there is sufficient evidence to support finding actual malice is a question of law for the court. *Id.*

Actual malice exists when "the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Ratcliff,* 750 N.E.2d at 437 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). In order to prove that a defendant published with reckless disregard, a plaintiff must designate "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* " '[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.'" *Bandido's,* 712 N.E.2d at 456 (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). Hence, the defendant's state of mind when making the publication is a "critical factor." *Id.* A defendant's state of mind is a subjective fact that may be shown by indirect or circumstantial evidence. *Ratcliff,* 750

N.E.2d at 437. A defendant cannot "automatically insure a favorable verdict by [stating in an affidavit] that he published with a belief that the statements were true." *Kitco, Inc. v. Corp. for General Trade,* 706 N.E.2d 581, 588 (Ind.Ct.App. 1999).

Poyser contends that Dorfman, in relying exclusively on the version of events related to her by Peerless, wrote the letter with reckless disregard for the truth. In order to prevail, Poyser must show that the School was aware of the inaccuracy of the statements in Dorfman's letter at the time of publication or had serious doubts as to their accuracy. Poyser has failed in this regard.

Dorfman testified at a deposition that she was in contact with Peerless regarding the Poyser situation from the time she received a copy of Poyser's letter and knew that Peerless was intending to place Poyser on probation at the September 24, 1999, meeting. Peerless contacted her after the meeting and informed her that Poyser had indicated her intent to resign but refused to talk about the terms with Hilligoss in the room, so he had terminated her employment. Although Dorfman thought it was "unusual" that Poyser refused to meet and would not talk in Hilligoss' presence, the scenario as related to her by Peerless seemed "plausible." Appellant's Appendix at 166. She and Peerless traveled to a conference in Chicago together the weekend after these events and discussed the situation. At the time the Board decided to clear up misconceptions in the School community about the School's handling of these events, Dorfman had not heard any rumors that Poyser was saying she had resigned. She had received a copy of the letter Poyser wrote after the September 24 meeting in which she recorded her account of the meeting in dialogue form. The Board was confident

that Peerless had "fairly and clearly" represented the events that transpired and felt no need to conduct a follow-up investigation before sending out the letter. Appellant's Appendix at 171. Recognizing the possibility that Peerless had given her erroneous information and that the Board could have asked more questions before sending out the letter, Dorfman nonetheless stated that she had no reason to doubt the truthfulness of Peerless' statements.

Poyser contends that because Dorfman relied upon Peerless as her sole source of information prior to writing the letter, she demonstrated reckless disregard for whether the statements she made concerning the encounter were true. She contends that this is at least sufficient to create a question of fact regarding the malice element, thus precluding summary judgment. We disagree. In defamation cases arising in the journalism arena, we have held that it is not sufficient to show that the reporting in question was speculative or even sloppy, *Cochran v. Indianapolis Newspapers, Inc.*, 175 Ind.App. 548, 372 N.E.2d 1211, 1220 (1978), and that the failure to investigate does not in itself establish malice. *Kitco*, 706 N.E.2d at 589. Despite Dorfman's reservations about Peerless as an administrator, she made it quite clear in her deposition that she believed he was truthful in relaying to her and the Board the events surrounding Poyser's departure and that she had no reason to doubt his version of events.

To the extent Poyser argues that malice can be inferred from the publication of the letter to the entire School community, we note that Poyser herself discussed the situation outside the immediate circle of people with a need to know. It is true that the letter was published to the entire School community—not just to parents of her own students, but to all parents. Even if this was a broader publication than strictly necessary, Poyser "opened the door" to such communications by discussing her complaints and the School's response with parents of her students, other faculty, and staff.

◼ Taking the evidence in the light most favorable to Poyser, and especially construing every statement in her letter following up the September 24 meeting in her favor, we hold that, as a matter of law, she has failed to show that the School published the letter with "reckless disregard" for the truth of the statements contained therein. Poyser's own recitation of the discussion during the September 24 meeting shows that she was terminated from her position at the School. The communications between the parties support the interpretation of Poyser's actions as depicted in the letter. She has failed to show that the School knew any of the statements in Dorfman's letter were false. Moreover, she has failed to show that the School recklessly disregarded whether the statements were false or not. Thus, she has failed to show that the School acted with actual malice [2] in publishing the letter and the trial court properly granted summary judgment. Because we hold as a

**2.** In *Bandido's*, our supreme court noted a few of the factual situations in which courts have found a defendant to have published statements with actual malice. *See* 712 N.E.2d at 465 n. 32. For example, in *Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976), the defendant fabricated defamatory quotations and printed defamatory allegations which were contradicted by a prior publication used as a source for the defendant's article. In *Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976), the defendant admitted that he did not believe the plaintiff had engaged in the conduct defendant alleged in his book. And in *Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969), the defendant wrote that a presidential candidate was mentally ill despite knowing the statement was false. All of these cases demonstrate much more egregious conduct than even alleged herein.

matter of law that there was no malice in the publication of the letter, we need not discuss whether the statements were in fact true or whether they were protected by the common interest privilege.

### Conclusion

As Poyser has failed to raise a genuine issue of material fact as to the element of malice required to sustain her defamation suit, we hold that the trial court properly granted summary judgment to the School. The judgment of the trial court is affirmed.

Affirmed.

BAILEY, J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, J., concurring.

While I concur in my colleagues' conclusion that Poyser failed to raise a genuine issue of material fact regarding actual malice,[3] I believe Judge Reed was correct that the analysis of whether a particular plaintiff is a public official, public figure, limited-purpose public figure (with its three subcategories), or private figure. *See id.* "Restricting the actual malice requirement to publications on subjects of public concern," according to Justice Boehm, "will leave the vast majority of the six million Hoosiers for whom Chief Justice Shepard expresses concern subject to a simple negligence standard for defamation." *Id.* at 471.

Finally, writing in dissent, Chief Justice Shepard and Justice Dickson contend that negligence is the standard of fault applicable to suits involving private-figure plaintiffs whether the matter is of public or private concern. *Id.* at 489 (Dickson, J., and Shepard, C.J., dissenting). However, if the private-figure plaintiff sues a *nonmedia* defendant, it appears Chief Justice Shepard and Justice Dickson would apply a strict liability standard:

> If somebody posts scandalous and defamatory material about a Hoosier on the internet, sending it all over the world, the victim may gain redress simply by showing that the defamation occurred (and, most likely, by responding effectively to the defense of truth). If a newspaper spreads exactly the same defamatory material, we know from *Gertz v. Welch* [418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)] that the victim will have to show negligence.

*Id.* at 471–72 (Shepard, C.J., and Dickson, J., dissenting).

*Bandidos* did not address the situation where a private-figure plaintiff sues a nonmedia defendant for defamation involving matters of nonpublic concern. In such a case, it appears at least three members of our supreme court would apply a negligence standard of fault—if not strict liability—rather than actual malice. Because Poyser chose to

---

3. It is not clear that actual malice with respect to the truth or falsity of Peerless's and Dorfman's statements is the proper standard of fault in this defamation case. The 1999 decision *Journal-Gazette Co. v. Bandidos, Inc.* exhibited sharp disagreement over the standard of fault in a defamation action. 712 N.E.2d 446 (Ind.1999) (2–1–2 opinion). The five justices of our supreme court fell into three main camps spread over four separate opinions. (Chief Justice Shepard and Justice Dickson each signed the other's dissent.)

First, the lead opinion (Justices Sullivan and Selby) expressed the view that actual malice is the standard of fault "in matters of public or general concern for private individual plaintiffs." *Id.* at 452 (Sullivan and Selby, JJ.). Although the lead opinion considered Bandidos a limited-purpose public figure, it believed it appropriate to discuss "the future of defamation law in Indiana" as it related to private-figure plaintiffs. *Id.* at 452 n. 7. According to the lead opinion, in defamation suits involving matters of public or general concern, private-figure plaintiffs must prove actual malice by clear and convincing evidence. *Id.* at 456, 469. "Actual malice exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* at 456 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

Second, Justice Boehm, in a concurring opinion, agreed that the actual malice standard should be applied to matters of public concern. *Id.* at 469 (Boehm, J., concurring). Justice Boehm believed, however, that characterizing a plaintiff as a public or private figure is really a surrogate for deciding whether the matter is one of public concern. *Id.* For this reason, he would do away with

the statements were true and protected by the common interest privilege.

## I. True Statements

Poyser contends that five statements in Dorfman's letter "were not true and *therefore* defamatory." Appellant's Br. p. 16 (emphasis added). First, it should be noted that a false statement is not necessarily defamatory. If a journalist, under severe and protracted hallucination, reported that I led the Indiana Hoosiers to the final game of the 2002 NCAA tournament as the team's star forward, my reputation would not suffer. Aside from Poyser's erroneous conclusion about defamation law, the five statements were accurate and protected by the common interest privilege.

In her appellate brief, Poyser complains of the five following statements:

1. "The incidents surrounding Mrs. Poyser's departure were instigated by her and not her supervisor, Mrs. Hilligoss";

2. "The Administration attempted to address Mrs. Poyser's concerns within the School published guidelines and policies";

3. "... Mrs. Poyser ignored School policies and Administration directives";

4. Mrs. Poyser "refused to meet with the Administration to resolve her concerns"; and

5. "... the School decided to terminate her contract."

Appellant's Br. p. 22 (omissions in original).

### A. Instigation

Poyser argues that Hilligoss's failure "to include [her] in the selection of new lower school faculty and the implementation of new educational materials" instigated her departure. Appellant's Br. p. 24. While Poyser may have felt her exclusion from administrative decisionmaking insufferable, her own acts prompted her departure, namely the meeting she herself requested with Peerless and her subsequent insubordination. She refused to meet with Peerless and Hilligoss when asked to do so. Poyser's self-determined act prompted her own departure. Thus, one may safely say that Poyser instigated her own departure. The statement was accurate.

### B. Attempt to Address Concerns

Poyser next complains that the School failed to abide by published guidelines and policies because Peerless at first directed her to meet with Hilligoss before meeting with him. Poyser relies on a contract provision requiring a meeting with Peerless in the event a faculty member determines to breach the contract before the end of the contract term. Poyser herself stated: "I wanted to reserve the final decision to be dependent upon what Mr. Peerless said to me." Appellant's App. p. 180. That contract provision is not at issue because Poyser had not yet determined to leave.

Poyser further claims she was entitled to a one-on-one interview with Peerless because he had resolved faculty complaints about another administrator in such a manner. Poyser has not shown that any published policy required a one-on-one meeting with Peerless whenever a teacher had a complaint about an administrator. As a result, Poyser's attempt to overturn the summary judgment on these grounds is unmerited.

---

argue her defamation action according to an actual malice standard, the fault standard is

appropriately resolved on that basis.

### C. Ignored School Policies and Administration Directives

It is undisputed that the School Handbook requires a teacher to follow the directives of her superior or be terminated for insubordination. Poyser refused to meet with Hilligoss and Peerless when asked to do so. The statement in Dorfman's letter was accurate.

### D. Refused to Meet with Administration

It is undisputed that Poyser was directed to meet with Hilligoss at 2:30 p.m. on September 22, 1999. It is undisputed that Poyser knew of the scheduled meeting. It is undisputed that Poyser sent an e-mail to Hilligoss at 2:01 p.m. advising that she would not meet at that time. It is undisputed that Hilligoss responded with an e-mail advising Poyser that a substitute teacher would cover her classroom for the scheduled meeting. It is undisputed that Poyser responded to the directive stating, "I repeat, I will not meet with you and David today." Appellant's App. p. 185. The complained-of statement was accurate.

### E. The School Terminated Her Contract

At the September 24, 1999 meeting, the following exchange took place according to Poyser's own account of the events:

[Peerless]: This is clearly insubordination and grounds for termination.

[Poyser]: David, you can't terminate me. I am here to discuss my resignation, be it days or weeks, plus how can you terminate someone who does not have a contract.

[Peerless]: I was not aware you had not turned in your contract. So, are you resigning as of this moment?

[Poyser]: I will give you my letter of resignation after we have discussed issues in my letter.

[Peerless]: Since you did not sign the contract, I guess you are not an employee, would you agree?

[Poyser]: I really don't know.

[Peerless]: Well, if that is the case, you do not need to give me a letter of resignation. Turn in your key.

Appellees' App. p. 16. It is clear from Poyser's own account of the events, that she had not resigned her post before being fired. She said that she wanted to discuss her resignation "be it days or weeks." Appellees' App. p. 16. Shortly thereafter, Poyser stated that she wanted to discuss other issues before giving Peerless her resignation letter. Peerless then fired her. The statement was accurate. In sum, the trial court correctly ruled that there was no genuine issue of material fact with respect to the defense of truth and that the School was entitled to summary judgment on that basis as well.

### II. Common Interest Privilege

Even if one assumed that the statements were defamatory, the statements were protected by a qualified privilege of common interest. The privilege applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind. 1994). The protection afforded a privilege may be lost upon a showing it was abused. *Id.* The privilege is abused when: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth. *Id.* Whether the qualified privilege protects a statement is a question of law. *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind.1992).

Poyser does not challenge the availability of the privilege to the School in general. Her claim is that the School abused its privilege in two ways. She first claims that the School abused its privilege because Dorfman had no grounds for believing the veracity of Peerless's statements. The statements were accurate. Thus, her claim on this basis fails.

Poyser next contends that the statements of Dorfman's October 5, 1999 letter were excessively published. On the day Peerless fired her, he sent a letter to the parents of Poyser's students stating simply, "It is with great regret that I have to announce that Karen Poyser is no longer teaching at St. Richard's School. . . . As it was an internal personnel issue we do not feel at liberty to share the details." Appellant's App. p. 265. A similar letter was sent to all St. Richard's parents noting, "We are sorry to advise you that Karen Poyser, teacher for Grade Two, is no longer with St. Richard's School. This decision was the conclusion of a normal personnel process for these matters." Appellant's App. p. 266. These letters were followed by Dorfman's letter sent October 5, 1999.

Poyser believes that only the parents of her second-grade students should have received Dorfman's letter. This may have been the case had Poyser restrained herself from discussing the matter with the parents of her students, faculty members, all the members of the board, and various custodial employees. Appellant's App. p. 188–89. According to Poyser's own complaint, there was "controversy surrounding [her] resignation." Appellant's App. p. 15. To clarify the situation, Dorfman sent the letter to St. Richard's parents.

Our supreme court held that Eli Lilly did not excessively publish information to 1,500 of its employees concerning the termination of six other employees for theft. *Schrader*, 639 N.E.2d at 263. Publication was not excessive because the information

suppressed "rumors and speculation" rampant in one of the company's complexes. *Id.* Likewise, because St. Richard's is a small, private K–8 school and parents pay tuition for their children to attend the school, St. Richard's had an interest in quelling any adverse impact resulting from the "controversy." Therefore, Poyser's claim of abuse of privilege fails on this basis as well.

In sum, I vote to affirm the trial court's summary judgment, because there was no actual malice, the statements were true, and St. Richard's did not abuse its common interest privilege.

### ORDER

This Court heretofore handed down its opinion in this appeal marked Memorandum Decision, Not for Publication;

Come now the Appellants, by counsel, and file herein their Motion to Publish Decision, alleging therein that said decision both clarifies existing law and is a matter of substantial public importance; that the same questions of law involved in this case are being presented to the trial, appellate and federal courts and therefore this case should be published so that it can be cited as precedent in the interests of judicial economy and consistency and the Appellees therefore pray that this Court publish its opinion heretofore hand down as a Memorandum Decision.

The Court having examined said Motion, having reviewed its opinion in this appeal and being duly advised, now finds that the Appellees' Motion to Publish Decision should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellees' Motion to Publish Decision is granted and this Court's opinion heretofore handed down in this case on August 15, 2002, marked Memorandum

Decision, Not for Publication, is now ordered published.