### Steven R. SHINE, Appellant–Defendant,

### v.

### J. Michael LOOMIS, Appellee–Plaintiff.

### No. 02A03–0412–CV–575.

Court of Appeals of Indiana.

Nov. 1, 2005.

Rehearing Denied Dec. 28, 2005.

Dane L. Tubergen, Fort Wayne, IN, Attorney for Appellant.

Bradley Kim Thomas, Waterloo, IN, Attorney for Appellee.

### OPINION

RATLIFF, Senior Judge.

#### STATEMENT OF THE CASE

Defendant–Appellant Steven R. Shine appeals the trial court's denial of his motion for summary judgment in a defamation action filed by Plaintiff–Appellee J. Michael Loomis.

We reverse and remand with instructions.

#### ISSUE

The following issue is dispositive: Whether the trial court erred in determining that there was a genuine issue of material fact regarding the element of actual malice.

#### FACTS AND PROCEDURAL HISTORY

In its June 3–4, 2000 edition, the Fort Wayne *News Sentinel* published an article describing Fort Wayne Police Officer Cleophus Jones' decision to plead guilty to charges he was paid by Fort Wayne Community Schools for off-duty security work he didn't perform. The article noted that Jones became a suspect "during a probe of police misconduct that was widely criticized because it focused on black officers, one of whom accused Jones of wrongdoing . . . ." Appellant's App. at 28.

In its November 21, 2001 edition, *Frost Illustrated*, billed as "Fort Wayne's Leading Independent Weekly Newspaper," published an article stating that Loomis, a former deputy prosecutor who had announced his candidacy for prosecutor, had in a November 14, 2001 news conference "launched a bevy of verbal assaults at Allen County Prosecutor Robert W. Gevers III—who also happens to be his former boss—and [Shine], a local attorney who also serves as chair of the Allen County Republican Party." Appellant's App. at 39. The article quoted Loomis as stating that Gevers was "lying" about the breakdown of an investigation of Fort Wayne Police Sgt. Robert L. Nathan and that Gevers had obstructed Loomis from "investigating any wrongdoing." *Id.* The article further quoted Loomis as criticizing Shine for his support of Deputy Prosecutor Karen Richards as the replacement for Gevers. Loomis opined that Shine was "in a position to personally profit from his choice." *Id.*

The article goes on to give Shine's response to Loomis' charges, a response that precipitated Loomis' defamation action. After Shine characterized Loomis' statements about his "position to personally profit" as "laughable," he stated, "It'd be absurd to support him because he uses the prosecutor's office as a vendetta against minorities and the multicultural community." *Id.*

On November 20, 2003, Loomis filed suit alleging five counts against Shine. In addition to Count I, Defamation, based on the comments Shine made that were published in the November 21, 2001 *Frost Illustrated* article, there were three counts related to similar statements made by Shine in interviews given by Shine to Fort Wayne-area television stations on November 26 and 27, 2001, and one count related to an editorial written by Shine for the November 29, 2001 edition of the Fort Wayne *Journal Gazette*. This editorial stated that Shine was calling for an independent review of the handling of police corruption cases by the Allen County Prosecutor's Office. The editorial further stated

> The campaign for prosecutor has become increasingly negative over the last two weeks. I regret that I allowed myself to become a part of that type of campaigning. The public deserves better than that which they have been presented in the prosecutor's race to date, and I will use all of my efforts to help ensure that a free flow of ideas and issues are placed before the voters to consider. . . .
>
> I also regret that I allowed the allegations that were made to me about race playing a major factor in the investigation of corruption in the Fort Wayne Police Department to become the basis of fact for which I based my comments to a reporter for Frost Illustrated. While I wish I had the opportunity to review my comments before they were printed, I have no one to blame but myself for the publication of the unfortunate remarks that predicted [sic] this distraction. I specifically retract the comments and further apologize to anyone who may have been affected by my comments.

Appellant's App. at 17.

On May 19, 2004, Shine filed a motion for summary judgment alleging that "there is no genuine issue of the fact that the alleged defamatory statements as set forth in plaintiff's complaint were made without 'actual malice.'" Appellant's App. at 23. After Loomis' response and a hearing on the motion, the trial court granted partial summary judgment on the basis that Loomis was required to show actual malice because Loomis was a public figure

at the time the alleged defamatory statements were made.[1] However, the trial court found that there was a genuine issue of material fact as to whether the alleged defamatory statements were made with actual malice. Shine now appeals.

## DISCUSSION AND DECISION

The purpose of summary judgment is to terminate litigation about which there is no factual dispute and which may be determined as a matter of law. *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind.Ct.App. 2001), *trans. denied.* When reviewing the grant or denial of summary judgment this court applies the same standard as the trial court. *Id.* Summary judgment is appropriate only if the designated evidentiary material shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

In performing our analysis, we consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without determining weight or credibility. *Mehling v. Dubois County Farm Bureau Co-op. Ass'n*, 601 N.E.2d 5, 6 (Ind.Ct.App.1992). All facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Id.*

 Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind.Ct.App. 1999), *trans. denied.* To establish defamation, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id.* A defendant in a defamation case is entitled to summary judgment if he demonstrates that the undisputed material facts negate at least one element of the plaintiff's claim. *Kitco v. Corporation for General Trade*, 706 N.E.2d 581, 587 (Ind.Ct.App.1999).

In arguing that he did not make any statements against Loomis with actual malice, Shine included a number of affidavits with his motion for summary judgment. In his own affidavit, Shine averred that in 2000 and 2001 he became aware of allegations by African–American police officers and leaders of the African–American community that an investigation being conducted by Loomis was racially motivated. Shine further averred that the investigation was the subject of a number of newspaper articles. Shine averred that he was approached by Fort Wayne Police Officer Fred Rogers in October of 2001 and that Rogers asserted that Loomis was specifically "targeting black police officers to the exclusion of white police officers" in his investigation. Appellant's App. at 26. Rogers asserted to Shine that it was a belief in the African–American community that Loomis was a racist.

Shine also averred that he had a conversation with Michael Latham, a minister and leader in the Fort Wayne African–American community, in which Latham told Shine that he was concerned that Loomis' investigation was "racially motivated." Appellant's App. at 26. Shine stated that he was aware that Latham had expressed this concern to other leaders in the African–American community and to public officials of the City of Fort Wayne.

---

1. In his response to the motion for summary judgment, Loomis stated that Shine had failed to establish that he was required to prove "actual malice" because Shine had "failed to show that [Loomis] was a 'public figure' at the time that [Shine] uttered the false, baseless, vulgar and offensive remark that is the subject of this litigation." Appellant's App. at 45. Loomis also stated that Shine had failed to show there was a "general or public concern' involved in this matter." *Id.*

Shine averred that after he talked with Rogers and Latham, he contacted a deputy prosecutor and told him about Rogers' and Latham's concerns. The deputy prosecutor confirmed to Shine that either all or substantially all of the police officers being investigated were African–American. Shine stated that at the time he made his initial remarks he believed that the concerns of Rogers, Latham, and Eunice Trotter, the reporter who wrote a series of articles about Loomis, were well founded.

In his affidavit, Latham averred that "[f]rom newspaper articles and from my personal conversations with various Fort Wayne police officers, I was aware that many people in the Fort Wayne African–American community believed that the investigation, headed by [Loomis], was especially targeting African–American police officers as the subjects of the investigation." Appellant's App. at 41. Latham further averred that he expressed his concerns to Shine.

In his affidavit, Rogers averred that he and other African–American police officers were subjects of Loomis' investigation. Rogers further averred that he contacted Shine and expressed his concern that Loomis was specifically targeting African–American officers. Rogers told Shine "white officers, for whom evidence of wrongdoing existed, were not being investigated." Appellant's App. at 44.

Loomis responded to the motion for summary judgment with a number of affidavits. In one affidavit, Greg Cassel, a Fort Wayne police officer, stated that (1) he was the lead investigator in a homicide investigation involving former police officer Mosely; (2) he assisted Loomis in the investigation; (3) he and Loomis investigated the issue of whether police officers had conducted themselves improperly; (4) the investigation was not racially motivated; and (5) he had worked closely with Loomis in homicide investigations for several years and had not observed "anything that would even remotely suggest that any of his work was ever racially motivated." Appellant's App. at 49.

An affidavit by former Fort Wayne Police Officer Pat Harper averred that (1) an investigation of Mosely revealed information about "a ghost employment, fraud and kickback scheme being run by 'off-duty' officers of the Fort Wayne Police Department at the Three Rivers Festival over the course of multiple years"; (2) he assisted Loomis in the grand jury investigation of the Festival's security arrangements; (3) neither Rogers nor Shine were authorized to receive information pertaining to the investigation; (4) the investigation was not racially motivated and "the Grand Jury investigation merely followed the evidence"; (5) he had worked with Loomis for over twelve years without observing "anything that would remotely suggest that any of [Loomis'] work was ever racially motivated"; and (6) Shine could never have been in possession of truthful information that the work of either Loomis or the Allen County grand jury was racially motivated. Appellant's App. at 51–52.

In his own affidavit, Loomis averred that the Fort Wayne Police Department, like other metropolitan police departments, is "continuously engaged in the review and investigation of police misconduct and corruption by virtue of its Internal Affairs Division, its civilian Board of Public Safety, [and other organizations and mechanisms]." Appellant's App. at 56. He also averred that these types of routine investigations did not necessitate his involvement and that his involvement therein "could not have been truthfully attributed" to him. *Id.* Loomis observed that these routine observations "undoubtedly were an irritant to those who were being investigated" and that "anyone who was the subject of such a

routine investigation could have circulated a rumor that an investigation of police misconduct and corruption was racially motivated, in order to undermine the investigation." *Id.*

Loomis further averred that a specific investigation of misconduct and corruption was launched by the Chief of the Fort Wayne Police Department prior to Loomis' ascendance to Chief Deputy Prosecuting Attorney. In addition to this internal investigation, a second investigation was conducted by Prosecuting Attorney Gevers. Loomis stated that he was not involved in either investigation.

Loomis also averred that he was subsequently instructed by Gevers to investigate allegations of improprieties at the Three Rivers Festival through the Grand Jury and that "this was the first time that [Loomis] was directly or indirectly involved in any investigation of misconduct or corruption in the Fort Wayne Police Department." Appellant's App. at 58. Loomis averred that after some indictments had been returned against police officers for ghost employment, fraud and kickback payments in connection with the Three Rivers Festival, Gevers asked that the Grand Jury not continue the investigation because of "too much political heat." Appellant's App. at 59.

In his response to the summary judgment motion, Loomis also provided a copy of a letter from Shine to Loomis which stated:

I have publicly apologized for and retracted my statement in Frost Illustrated as it pertains to your seeking the office of Prosecutor of Allen County. I wanted to take this opportunity to personally apologize to you for the statement and any irritation that you may have experienced as a result of my comments.

Thank you for your attention to this letter. I hope you will accept this apology as both sincere and an effort to lessen the tensions that have permeated this election to date.

Appellant's App. at 92.

Loomis does not challenge the trial court's conclusion that, as an announced candidate for public office, he was a public figure at the time Shine made his comments. Both a public figure and a private individual bringing a defamation action over a matter of public or general concern must prove by clear and convincing evidence that the defendant made the alleged defamatory statement with "actual malice." *Journal–Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 452 (Ind.1999), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999). The actual malice element required by the United States Supreme Court and our state courts is not to be confused with the ordinary definition of "malice" as "an evil intent or motive" arising from spite or ill will. *See Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 111 S.Ct. 2419, 2429–30, 115 L.Ed.2d 447 (1991). Actual malice, as an element of the tort of defamation, exists when the defendant publishes a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964); *Bandido's,* 712 N.E.2d at 456.

"Reckless disregard" of whether a statement was false or not is more than mere negligence. The United States Supreme Court has held:

These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the

defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Furthermore, reckless disregard may be shown by proof that the false publication was made with a "high degree of awareness of [the statement's] probable falsity." *Bandido's, id.* (quoting *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)). A reckless disregard for the truth "requires more than a departure from reasonably prudent conduct." *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989).

■■ The defendant's actual state of mind is a critical factor in the analysis of whether a statement was made with reckless disregard. *Bandido's, id.* (citing *Herbert v. Lando,* 441 U.S. 153, 160, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979)). The defendant's state of mind is a subjective fact, and it may be shown by indirect or circumstantial evidence. *Id.* The question of whether there is sufficient evidence to support a finding of actual malice is a question of law to be determined by the court. *Id.* This rule is based on two important considerations: "(1) the 'national commitment to the free exchange of ideas, as enshrined in the First Amendment;' and (2) the recognition that '[j]udges as expositors of the Constitution' have a duty to 'independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of actual malice.'" *Bandido's,* 712 N.E.2d at 456.

Much of the emphasis in Loomis' arguments before the trial court and his brief on appeal is on the issue of whether Shine's statements accurately characterized Loomis' involvement and/or intent in the investigation of African–American police officers. However, this emphasis was not the focus of Shine's motion for summary judgment. Accordingly, Loomis' arguments pertaining to the defense of truth are misdirected.

■ An additional emphasis is that Shine failed to make a sufficient investigation into the statements made by Latham and Rogers, especially given the fact that Rogers was possibly under investigation and had an interest in damaging Loomis' reputation. However, the failure to investigate, and by implication, the undertaking of a less than thorough investigation, does not in itself establish malice. *See Poyser v. Peerless,* 775 N.E.2d 1101, 1108 (Ind.Ct. App.2002).

■ Taking the designated evidence in the light most favorable to Loomis, as we must in considering a summary judgment motion, we will assume that Shine's statements did not accurately characterize Loomis' involvement and/or intent in the investigation of African–American police officers. We will further assume that Shine failed to make a thorough investigation of the accuracy of Latham's and Rogers' remarks. Even with these assumptions, however, Loomis has failed to show that there is a genuine issue of material fact pertaining to the element of actual malice and that Shine is not entitled to judgment as a matter of law.

In addition to his arguments pertaining to the truth of Shine's statements, Loomis argues that Shine's apology and November 29, 2001 article create an inference that Shine's November 21, 2001 statements were made with actual malice. The mere fact of an apology by Shine does not create an inference of actual malice. This is especially true because the apology at no

point states or infers that Shine believed his statements to be false and because the purpose of the apology—the lessening of tensions in the prosecutor's race—was abundantly clear.

Loomis states that the November 29, 2001 article is "both an admission of guilt and a reflection of malice through reckless disregard of the facts at the time of the defamatory comments to *Frost Illustrated*." Appellee's Brief at 13. Loomis emphasizes that Shine referred to the information he received as "allegations" and that those allegations were Shine's "basis of fact" for his comments. *Id.* Loomis reads too much into the language of the article. The word "allegation" means that a statement "has yet to be proved or supported by evidence";[2] it does not mean that Shine knew or had a high degree of awareness of the probable falsity of the statements made by informants.

Our review has disclosed that there is no genuine issue of material fact pertaining to the issue of whether Shine made his comments with actual malice.[3] Furthermore, our review leads us to the conclusion that Shine is entitled to judgment as a matter of law.

## CONCLUSION

Taking into consideration the designated facts and the law pertaining to those facts, we determine that the trial court erred in concluding that a genuine issue of material fact existed on the question of actual malice. Accordingly, we reverse and remand with instructions that the trial court grant Shine's summary judgment motion.[4]

Reversed and remanded with instructions.

SHARPNACK, J., concur.

BARNES, J., concurring with separate opinion.

BARNES, Judge, concurring with separate opinion.

I concur, but write separately to express both my concern and reservation that the First Amendment shields the conduct and speech described here. The chairman of a political party made a false statement to a media outlet about a candidate whom he did not support in a primary election. This statement accused the candidate of racially intolerant behavior. The charge was clearly incendiary particular in this context. "Coincidentally," this statement received widespread media coverage and, perhaps not so "coincidentally," the candidate lost the primary election to the candidate favored by the chairman.

I understand that in matters of public or general concern a showing of actual malice

2. Encarta ® World English Dictionary [North American Edition] 2005 Microsoft Corporation.

3. Shine has suggested that we require Loomis to meet a heightened standard of showing actual malice by clear and convincing evidence at the summary judgment stage. In *Chester v. Indianapolis Newspapers, Inc.*, 553 N.E.2d 137, 140–41 (Ind.Ct.App.1990), *trans. denied,* a panel of this court held that a party does not have to meet the heightened standard at the summary judgment stage. In *Heeb v. Smith,* 613 N.E.2d 416, 420 (Ind.Ct. App.1993), *trans. denied,* a separate panel of this court held that a court must take the heightened standard of proof into account when ruling on a motion for summary judgment. Because we have determined that Loomis presented no evidence of actual malice, we need not address this issue.

4. Loomis alleges that the grant of summary judgment should cover only the statements made by Shine in the November 21, 2001 *Frost Illustrated* article. We note that Shine's motion for summary judgment refers to all of the statements referred to in Loomis' complaint, and our holding pertains to all of these allegedly defamatory statements.

is required and that such exists only "when the defendant publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." *Journal–Gazette Co., Inc. v. Bandido's, Inc.,* 712 N.E.2d 446, 456 (Ind.1999) (quotation and citation omitted), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999). I am also well aware that for Loomis to establish reckless disregard he was required to show that Shine in fact entertained serious doubts as to the truth of his publication or proof that he made the false publication with a high degree of awareness of the probable falsity. *See id.* Despite the hardball politics seeping through the entire fabric of this case, I reluctantly conclude that Loomis did not make such a showing.

I do note, however, that one of the affidavits used to buttress the claim that Shine was acting with some basis in truth is from a police officer who was the subject of the investigation that spurred the comments by Shine. Clearly, this is a rather shaky foundation for the constitutional principles at issue. I believe in constitutionally protected free speech and fully grasp that political elections must be covered under that guarantee, but the context and facts of this case make it particularly painful for me to do so.