**UTILITY CENTER, INC.,**
Appellant–Plaintiff,

v.

**CITY OF FORT WAYNE, Indiana,**
Appellee–Defendant.

No. 02A04–0410–CV–576.

Court of Appeals of Indiana.

Sept. 15, 2005.

---

Paul Helmke, Helmke, Beams, Boyer & Wagner, Fort Wayne, Joe Conner, Misty Smith Kelley, Pro Hac Vice, Baker, Donel-son, Bearman, Caldwell & Berkowitz, Chattanooga, TN, for Appellant.

Daniel W. McGill, Nicholas K. Kile, Barnes & Thornburg LLP, J. Christopher Janak, Ty H. Conner, Bose McKinney & Evans LLP, Indianapolis, for Amici Indiana Association of Sewer Companies et al.

Karl L. Mulvaney, Randolph L. Seger, Brian W. Welch, Christopher M. York, Bingham McHale LLP, Indianapolis, for Appellee.

Adam Arceneaux, Brian E. Bailey, Ice Miller, Indianapolis, for Amici the Indiana Association of Cities and Towns and Indiana Municipal Lawyers Association.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Utility Center, Incorporated ("Utility Center") appeals the trial court's grant of summary judgment in favor of Appellee–Defendant, the City of Fort Wayne ("City"). We affirm in part, reverse in part, and remand.[1]

### Issues

Utility Center raises two issues on appeal, which we restate as:

I. Whether the trial court abused its discretion by striking the affidavit of David C. Long; and

II. Whether the trial court erroneously granted summary judgment to City because City failed to adhere to the procedures enunciated in Indiana Code 8–1–30 when it initiated the condemnation of Utility Center's property through the process of eminent domain.[2]

---

1. We hereby deny Utility Center's motion for oral argument.

2. In the alternate, Utility Center contends that the trial court's grant of summary judgment in favor of City was erroneous because, in its

## Facts and Procedural History

Utility Center is a for-profit corporation, which operates a public utility under the assumed name of Aqua Indiana, Incorporated. In particular, Utility Center holds indeterminate permits, issued by the Indiana Utility Regulatory Commission ("Commission"), to render water and sewage disposal service to consumers in certain areas of Allen County. Utility Center's sewer and water facilities in Allen County are divided into two geographic systems: (1) the North System, which is the subject of the present condemnation proceeding; and (2) the Aboite System, which is not at issue in this case. All of the North System's assets are located within City's corporate limits or in contiguous territory not more than six miles from the corporate limits.

On June 12, 2002, City—which owns and operates municipal sewer and water utilities within Fort Wayne's corporate limits—through its Board of Public Works ("Board") adopted Resolution Number 89–183–6 ("Resolution 89–183–6"), initiating condemnation proceedings under now-Indiana Code 32–24–2 to acquire Utility Center's North System. In passing Resolution 89–183–6, the Board determined that: (1) customers of Utility Center's North System "would receive higher quality, lower cost water and wastewater utility service if they were customers of [City;]" (2) to best serve these customers, City should acquire the water and wastewater utility property of the North System; (3) City has made numerous attempts to persuade Utility Center to negotiate a purchase price for acquisition of the North System, but the latter has been unwilling to negotiate in any manner; (4) as a result of Utility Center's refusal to negotiate, it is necessary for City to condemn and appropriate the North System. Appellant's App. at 163.

Pursuant to Indiana Code 32–24–2, which sets forth the general procedures to be followed when a municipality, such as City, wishes to acquire property—i.e., real or personal—for the use of the municipality, through eminent domain, City published a notice of Resolution 89–183–6 in two Fort Wayne newspapers of general circulation for two consecutive weeks. The notice, which was last published on June 21, 2002, informed the general public that the Board would receive or hear remonstrances from anyone interested in the proceeding on July 3, 2002, at 9:00 a.m. The Board held the remonstrance hearing on July 3, and Utility Center was the only entity or person to appear or remonstrate at that hearing.

On July 10, 2002, the Board adopted Resolution Number 89–211–1, which confirmed and reaffirmed Resolution 89–183–6 and provided a list of property owners affected by the condemnation, i.e., Utility Center. On June 18, 2003, the Board adopted Resolution Number 90–199–6, which continued the condemnation process and authorized City officials to hire two appraisers to determine the appropriate value of the North System. Subsequently, on December 17, 2003, the Board passed Resolution Number 90–402–39, accepting

---

efforts to condemn the utility property, City failed to follow the procedures set forth in Indiana Code 8–1.5–2. Initially, we observe that Indiana Code Section 8–1.5–2, which governs the transfer, acquisition, and improvement of utilities by municipalities, does *not* apply to utilities governed by Indiana Code Section 8–1–2, except for municipally-owned utilities. *See* Ind.Code § 8–1.5–2–2. Here, because Indiana Code 8–1–2 applies to the utility in question, Indiana Code 8–1.5–2 and the procedures enunciated therein appear to be inapplicable to the present controversy. In any event, we do not need to address this issue in light of our resolution of issue two.

the appraiser's reports, valuing the North System at $17,202,499.50—i.e., the average of the two appraisals—and scheduling a hearing on January 14, 2004 to hear remonstrances concerning the valuation. The January 14th hearing was continued pending resolution of the present dispute.

On July 25, 2002, Utility Center filed a complaint for declaratory judgment against City, alleging that City had failed to follow the proper eminent domain or condemnation statute when it initiated the condemnation proceedings to acquire the North System. On January 23, 2004, City filed a motion for summary judgment, arguing that: (1) under Indiana Code Section 8–1–2–93, Utility Center waived its right to object to the present condemnation when it accepted the indeterminate permit to own and operate the utility; (2) Indiana Code 32–24–2 is a proper procedure for City to have employed for the condemnation proceedings; and (3) Indiana Code 8–1.5–2 provides optional condemnation proceedings, which City was not required to follow in acquiring the North System.

In response, on February 26, 2004, Utility Center filed a motion for summary judgment, seeking, in part, a declaration that City must follow the procedures enunciated in Indiana Code 8–1–30 to condemn the North System. To support its summary judgment motion, Utility Center designated as evidence the affidavit of David C. Long ("Long Affidavit"), the state senator who authored Senate Bill 177, which contains the language that was eventually adopted by the Indiana Legislature as Indiana Code Section 8–1–30–6. At the hearing on the cross motions for summary judgment, City orally moved to strike the Long Affidavit, which the trial court granted. At the conclusion of the hearing, the trial court entered findings of fact and conclusions thereon, denying Utility Center's motion for summary judgment and entering summary judgment in favor of City. It is from this order that Utility Center now appeals.

## Discussion and Decision

### I. Summary Judgment Standard of Review

On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997). Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the

judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied*. Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

In addition, "[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct.App.2000).

## II. Analysis

On appeal, Utility Center argues that the trial court abused its discretion when it struck the Long Affidavit because the affidavit was designated in accordance with Indiana Trial Rule 56. Utility Center also contends that, in granting summary judgment to City, the trial court erroneously determined that Indiana Code 8–1–30 does not apply to the controversy at issue. We separately address each issue.

### A. Motion to Strike

 Utility Center first argues that the trial court abused its discretion when it granted City's motion to strike the Long Affidavit. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Richardson v. Calderon*, 713 N.E.2d 856, 860 (Ind.Ct.App. 1999), *reh'g denied, trans. denied*. We will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and the circumstances before the trial court. *Id.* Affidavits in support of or in opposition to a motion for summary judgment are gov-

erned by Indiana Trial Rule 56(E), which provides, in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

 The Long Affidavit provides, in relevant part, as follows:

3. I was the author of Senate Bill 177 ... which was eventually adopted by the Indiana Legislature and approved by the Governor and which bill contained the language which is now found at Indiana Code Section 8–1–30–6.

\* \* \* \* \* \*

7. My purpose in providing this affidavit is to explain, in the clearest possible language, that my intent as the author of Senate Bill 177 was to prevent a municipal utility from using its power of eminent domain to acquire a healthy utility, because I believed that to allow otherwise would create a chilling effect upon the goals of Senate Bill 177.

8. Senate Bill 177 sought to create an incentive for a private *or* municipal utility to take over a troubled utility and make the necessary investments to bring that troubled utility back to health..... I believed, as the author of the bill, that it was critical to create a positive environment for private utilities if we were to induce private utilities to participate in this new process. I believed that to allow municipal utilities to acquire a formerly troubled utility by eminent domain after a private utility had made the financial investments to return that utility to health would be a strong disincentive for a private

utility to ever get involved in that process. That, in turn, would have created a disincentive for the [Commission] to take the bold step of placing an existing troubled utility into receivership in the first place.

9. For these reasons, I intentionally placed language in Senate Bill 177 that prevented a municipal utility from using its powers of eminent domain to take over the ownership of a healthy private utility.

Appellant's App. at 2–3 (emphasis in original).

The Indiana Supreme Court has held, however, that the motives of individual sponsors of legislation cannot be imputed to the legislature, absent statutory expression. *See O'Laughlin v. Barton*, 582 N.E.2d 817, 821 (Ind.1991) (finding error, albeit harmless, where the trial court considered individual affidavits of senators as evidence that the legislature intended a particular act to apply retroactively), *reh'g denied*. Therefore, although the averments made in the Long Affidavit are based upon his personal knowledge and opinion regarding whether the legislature intended Indiana Code Section 8–1–30–6 to apply to a municipality's acquisition of a non-troubled public utility, they do not set forth facts as would be admissible into evidence under Indiana Trial Rule 56. Accordingly, the trial court properly granted City's motion to strike.

### B. Grant of Summary Judgment

Next, Utility Center contends that the trial court erred by granting City's motion for summary judgment because, in its effort to condemn the North System, City failed to adhere to the procedural requirements of Indiana Code 8–1–30. Because of the procedural posture of this case, we first clarify that the issue before us concerns solely the proper statutory procedure to be used by City in condemning Utility Center's North System.[3] Utility Center maintains that, because the North System offers water and sewer services to public consumers, Indiana Code Section 8–1–30–6 applies and, thus, City must follow the procedures set forth in Indiana Code 8–1–30.[4] City counters that, because Utility Center has an indeterminate permit to own and operate the North System, City may condemn the utility under Indiana Code 32–24–2 and, further, that Indiana Code 8–1–30 is inapplicable to this condemnation proceeding because the North

---

3. The amount of compensation for such condemnation is not an issue before us.

4. This Court now grants Indiana Utility Group's motion to appear as amici curiae and file brief. In so doing, we note that the Indiana Association of Sewer Companies, Indiana–American Water Company, Inc., American Suburban Utilities, Inc., Hamilton Southeastern Utilities, Inc., Sani Tech, Inc., Eastern Hendricks County Utility, Inc., Southeastern Utilities, Inc., Edwardsville Water Corporation, Riverside Water Company, Inc., and Eastern Bartholomew Water Corporation, care of the Indiana Utility Group, have filed a joint amicus curiae brief in support of Utility Center's position.

City has filed a motion to strike section c of the Indiana Utility Group's amicus brief, alleging that the arguments set forth in section c are not properly before this Court. Indiana Appellate Rule 42 provides, in pertinent part, that:

Upon motion made by a party within the time to respond to a document, or if there is no response permitted, within thirty (30) days after the service of the document upon it, or at any time upon the court's own motion, the court may order stricken from any document any redundant, immaterial, impertinent, scandalous or other inappropriate matter.

Because the material in dispute does not pertain to the present action, we now grant City's motion to strike. *See supra* Part A.

System is not a troubled utility.[5] Resolution of this issue requires us to examine, in general, the law regarding public utilities and, in particular, the statutory procedures required for the acquisition of a water and sewer public utility through eminent domain.

### 1. *Indiana Code 8–1–2: Indeterminate Permits*

The Shively–Spencer Utility Act of 1913 expressly authorized municipalities to acquire privately-owned utilities by condemnation, where purchase was impossible, either because the owner would not sell, or the price could not be agreed upon. The Act provided, in relevant part, that the acceptance of its provisions by the holder of an indeterminate permit created a binding contract between it and the state which was not dependent upon the power of eminent domain. *Public Serv. Co. of Ind. v. City of Lebanon*, 221 Ind. 78, 86, 46 N.E.2d 480, 483 (1943). An "indeterminate permit" is defined as:

[E]very grant, directly or indirectly from the state, to any corporation, company, partnership, limited liability company, . . . to own, operate, manage, or control any plant or equipment, or any part of a plant or equipment, within this state, for the:

(1) production, transmission, delivery, or furnishing of heat, light, water,

or power, either directly or indirectly to or for the public;

(2) collection, treatment, purification, and disposal in a sanitary manner of liquid and solid waste, sewage, night soil, and industrial waste;

\* \* \* \* \* \*

which shall continue in force until such time as the municipality shall exercise its right to purchase, condemn, or otherwise acquire the property of such public utility, as provided in this chapter, or until it shall be otherwise terminated according to law.

Ind.Code § 8–1–2–1(i).

In that vein, Indiana Code Section 8–1–2–92 provides:

Every license, permit, or franchise granted after April 30, 1913, to any public utility[6] shall have the effect of an indeterminate permit subject to the provisions of this chapter, and subject to the provisions that the license, franchise, or permit may be revoked by the commission[7] for cause or that the municipality may purchase the property of such public utility, as provided in this section. *Any such municipality is authorized to purchase such property and every such public utility is required to sell such property at the value and according to the terms and conditions as provided in this chapter.*

---

5. The Indiana Association of Cities and Towns and the Indiana Municipal Lawyers Association have filed a joint amicus curiae brief in support of City's position.

6. Indiana Code Section 8–1–2–1(a) defines "public utility" as:

[E]very corporation, company, partnership, limited liability company . . . that may own, operate, manage, or control any plant or equipment within the state for the . . . (2) production, transmission, delivery, or furnishing of heat, light, water, or power; or (3) collection, treatment, purification, and

disposal in a sanitary manner of liquid and solid waste, sewage, night soil, and industrial waste.

The term does not include "a municipality that may acquire, own, or operate any of the foregoing facilities." *See id.*

7. Indiana Code Section 8–1–2–1(f) defines "Commission," as "the commission created by IC 8–1–1–2." Moreover, Indiana Code Section 8–1–1–1 clarifies that the term "commission," as used in this article, refers to the Indiana Utility Regulatory Commission.

(Emphasis added). Further, Indiana Code Section 8–1–2–93 provides:

> Any public utility accepting or operating under any indeterminate license, permit, or franchise granted after April 30, 1913, shall by acceptance of any such indeterminate license, permit, or franchise be deemed to have consented to a future purchase of its property including property located in contiguous territory within six (6) miles of the corporate limits of such municipality by the municipality in which such utility is located, at the value and under the terms and conditions as provided in this chapter, and shall thereby be deemed to have waived the right of requiring the necessity of such taking to be established by the judgment of a court, and to have waived all other remedies and rights relative to condemnation, except such rights and remedies as are provided in this chapter and shall have been deemed to have consented to the revocation of its license, permit, or franchise by the commission for cause.

Thus, pursuant to these statutory provisions, all public utilities operating after 1913 do so under an indeterminate permit, which may be revoked by the Commission for cause and which gives a municipality the right to purchase the property of the utility in the future. If the municipality exercises its right of purchase, the public utility is required, via its acceptance of the indeterminate permit, to sell its property. Indeed, by accepting the indeterminate permit, the utility is deemed to have consented to a future purchase of its property—including property located within six miles of the municipality's corporate limits—by the municipality, at the value and

under the terms and conditions as provided in Indiana Code 8–1–2. The public utility is also deemed to have waived its right of requiring the municipality to establish the necessity of such taking in a court proceeding, as well as most of its remedies and rights relative to condemnation. The utility is, further, deemed to have consented to the revocation of its license, permit, or franchise by the Commission for cause.

A public utility, such as Utility Center, accepts the indeterminate permit and agrees to the provisions of Indiana Code 8–1–2, in exchange for the privilege of providing utility service to the public at large. However, a utility company that sells, or is forced to sell, its property to the municipality, pursuant to Chapter 2, is entitled to certain procedural rights to ensure that it is justly compensated. *See* U.S. CONST. amend. V (providing that "nor shall private property be taken for public use, without just compensation"); *see also* IND. CONST. art. I, § 21 (providing "no person's property shall be taken by law, without just compensation"). The question remains, then, to which process are they entitled, i.e., that enunciated in Indiana Code 32–24–2, or that prescribed by Indiana Code 8–1–30.

### 2. *Indiana Code 32–24–2* [8]

Indiana Code 32–24–2 sets forth the procedures to be followed when a municipality, such as City, wants to acquire property—i.e., real or personal—for the use of the municipality, through eminent domain. *See* Ind.Code §§ 32–24–2–3, –6. In particular, Indiana Code Section 32–24–2–6 provides, in relevant part:

---

**8.** Indiana Code Section 32–24–2–5 allows the municipality acquiring property through eminent domain to either proceed under Indiana Code 32–24–2 or Indiana Code 32–24–1, which delineates the general procedures for eminent domain. Thus, assuming Indiana Code 32–24–2 applies to the present circumstance of a city attempting to acquire a public water and sewer utility through eminent domain, City enjoyed the option of proceeding under Indiana Code 32–24–2 or 32–24–1.

(b) The works board must adopt a resolution that the municipality wants to acquire the property. The resolution must describe the property that may be injuriously or beneficially affected. The board shall have notice of the resolution published in a newspaper of general circulation published in the municipality once each week for two (2) consecutive weeks. The notice must name a date, at least ten (10) days after the last publication, at which time the board will receive or hear remonstrances from persons interested in or affected by the proceeding.

(c) The works board shall consider the remonstrances, if any, and then take final action, confirming, modifying, or rescinding its original resolution. This action is conclusive as to all persons.

When a final action under section 6 is taken, the board must have prepared a list of all the owners or holders of the property, and of interests in it, sought to be acquired or to be injuriously affected.[9] Ind. Code § 32–24–2–7(a).

Once the municipality has completed the list, its works board shall award the damages sustained and assess the benefits accruing to each piece of property on the list. Ind.Code § 32–24–2–8(a). The board shall, then, serve a written notice upon the owner of each piece of property—detailing the amount of the assessment or award—

by leaving a copy of the notice at the owner's last usual place of residence in the municipality or by delivering a copy to the owner personally. *Id.* at (b). If the owner is a nonresident, or if the owner's residence is unknown, the works board shall notify the owner by publication in a daily newspaper of general circulation in the municipality once each week for three successive weeks. *Id.* at (c).

Such notices must name a day—at least ten days after service of notice or after the last publication—on which the works board will receive or hear remonstrances with regard to the amount of their respective awards or assessments. *Id.* at (d). A person notified, or considered to be notified,[10] of the hearing may appear before the works board on the day fixed for hearing remonstrances and remonstrate in writing against them. Ind.Code § 32–24–2–10(a). After the remonstrances have been received, the works board shall either sustain or modify the awards or assessments, in the case of remonstrances that have been filed, or sustain the award or assessment, in the case of an award or assessment against which a remonstrance has not been filed. *Id.* at (b). We next examine the procedural requirements of Indiana Code 8–1–30.

### 3. *Indiana Code 8–1–30*

In contrast to Indiana Code 32–24–2, Indiana Code Section 8–1–30, which gov-

---

9. Indiana Code Section 32–24–2–7(b) provides:

The list required by subsection (a) may not be confined to the owners of property along the line of the proposed work but must include all property taken, benefited, or injuriously affected. In addition to the names, the list must show, with reasonable certainty, a description of each piece of property belonging to those persons that will be acquired or affected, either beneficially or injuriously. A greater certainty in

names or descriptions is not necessary for the validity of the list than is required in the assessment of taxes.

10. Indiana Code Section 32–24–2–8(e) provides: "Persons not included in the list of the assessments or awards and claiming to be entitled to them are considered to have been notified of the pendency of the proceedings by the original notice of the resolution of the works board."

erns the operation of certain water and sewer utilities, establishes a procedure whereby the Commission may review a utility company's (1) technical, financial, and managerial capacity; (2) physical condition and capacity of the utility company's plant; (3) compliance with Indiana or federal law or the Commission's orders; and (4) provision of service to customers. Ind. Code § 8–1–30–3. The Commission may conduct such review upon its own motion, a request of the Office of the Utility Consumer Counselor, or upon the filing of a complaint by a customer of the utility company. *Id.* Pursuant to Indiana Code Section 8–1–30–5, the Commission may also issue orders—providing for the acquisition of the subject utility company by another utility company, a municipally owned utility, or by another person that has the ability to operate the subject utility company—if the Commission finds that the utility company has continued violating the Commission's orders or the utility company has severe deficiencies that it has failed to remedy. *Id.*

Before making such an order, however, the Commission must provide a hearing and give notice of that hearing to: (1) the subject utility company, i.e., a utility company that is the subject of a finding by the Commission; (2) other utility companies in Indiana; and (3) the appropriate public agencies and political subdivisions, including all municipalities, located in the subject utility company's service territory. *See id.* The requirement that notice be given to other utility companies in Indiana, who are in the business of providing various public services and, therefore, probably best suited to determine a purchase price and manage a utility (troubled or otherwise), as opposed to contiguous landowners, appears to be a key distinction between Indiana Code 8–1–30 and Indiana Code 32–24–2.

### 4. Resolution of the Present Controversy

As previously mentioned, the parties disagree as to which statutory procedure pertains to the present controversy. Specifically, Utility Center argues that Indiana Code 8–1–30 applies, via the unambiguous language of Indiana Code 8–1–30–6, which provides:

A municipality or other governmental unit may not require a utility company that provides water or sewer service to sell property used in the provision of such service to the municipality or governmental unit under IC 8–1–2–92, IC 8–1–2–93, or otherwise, unless the procedures and requirements of this chapter have been complied with and satisfied.

By contrast, City maintains that the procedures delineated in Indiana Code 32–24–2 govern the case at bar. Resolution of these contentions requires us to apply tools of statutory construction. Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *Shaffer v. State,* 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003). De novo review permits us to decide an issue without affording any deference to the trial court's decision. *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000). When a statute has not previously been construed, such as Indiana Code Section 8–1–30–6, our interpretation is controlled by the express language of the statute and the rules of statutory construction. *Shaffer,* 795 N.E.2d at 1076. Our primary goal in such construction is to determine, give effect to, and implement the intent of the legislature. *Robinson v. Gazvoda,* 783 N.E.2d 1245, 1250 (Ind.Ct.App.2003), *trans. denied.*

When a statute is subject to different interpretations, the interpretation of the statute by the administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless

that interpretation is inconsistent with the statute itself. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000). When faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. *See Sullivan v. Day*, 681 N.E.2d 713, 716 (Ind.1997). Indeed, if a court determines that an administrative agency's interpretation is reasonable, it should terminate its analysis and not address the reasonableness of the other party's interpretation. *Shaffer*, 795 N.E.2d at 1076–77 (citing *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind.1998)). Terminating the analysis recognizes "the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations." *Ind. Wholesale Wine*, 695 N.E.2d at 105.

Here, the Commission is the agency charged with regulating public utilities in Indiana. *See* Ind.Code § 8–1–1–3(g) ("The commission shall formulate rules necessary or appropriate to carry out the provisions of this chapter, and shall perform the duties imposed by law upon them.") On February 9, 2001, while confronting an issue similar to the one at bar—i.e., which statutory procedure a municipality must follow to condemn the property of a utility—the Commission determined that Indiana Code Section 8–1–30–6 does not apply, generally, to a municipality seeking to acquire, by condemnation, a water or sewer utility. *See In the Matter of the Petition of the City of Indianapolis*, Cause No. 41821, 2001 WL 1870064, 2001 Ind. PUC LEXIS 109 (Dec. 12, 2001). Instead, the Commission opined that Indiana Code Section 8–1–30–6 only applies in circumstances where municipalities are seeking to acquire the property of specific public utilities that are in violation of the law or the Commission's orders, or that have failed to remedy severe deficiencies, i.e., the so-called troubled utilities. In that vein, the Commission noted:

> Indiana Code § 8–1–30–6, when read as a whole and in context with the remaining sections of Chapter 30, does not limit a municipality's ability to condemn the property of a public utility . . . .

Appellant's App. at 161. It further determined that, because Title 8 of the Indiana Code expressly grants municipalities the power to condemn the property of a privately owned, for-profit utility (*see* Ind. Code § 8–1.5–2–15), it would be absurd to apply Indiana Code Section 8–1–30–6 to all public utilities. Such an application, in the Commission's view, would strip a municipality of its authority to condemn the property of a utility, on its own accord, because Indiana Code 8–1–30 contemplates an investigation being initiated by the Commission, at the request of the Utility Consumer Counselor, or upon the filing of a complaint by a utility customer—and not by the municipality itself. *Id.; see* Ind. Code § 8–1–30–3.

■ Because the Commission has expressed its view on the application of Indiana Code Section 8–1–30–6, the question before us becomes whether its interpretation of the statute is reasonable. This is a question of first impression in Indiana.

As evidenced by its title, Indiana Code Section 8–1–30 governs the operation of certain water and sewer utilities. *See, e.g., City of Evansville v. Zirkelbach*, 662 N.E.2d 651, 653–54 (Ind.Ct.App.1996) ("When construing a statute, the reviewing court may look to the titles and the headings of the statute, . . . and may examine the grammatical structure of the clause or sentence in issue."), *trans. denied.*

Indiana Code Section 8–1–30–2 defines "utility company"—as used in Chapter 30—as either of the following: (1) a public utility that provides water or sewer service; or (2) a regional sewer and water district. The term "utility company" does not include a municipally owned utility. *See* Ind.Code § 8–1–30–2. Thus, Utility Center is a "utility company" under Indiana Code Section 8–1–30–2.

That said, by its plain and unambiguous language, Indiana Code Section 8–1–30–6 forbids a municipality, such as City, from requiring a utility company that engages in water and sewer service, such as Utility Center, to sell property used in the provision of such services—i.e., the North System—to the municipality under Indiana Code Section 8–1–2–92 or 8–1–2–93, or otherwise, *unless* the procedural mandates of Indiana Code 8–1–30 have been satisfied. This section does not limit its application to troubled utilities. Rather, by its express terms, it applies to all utility companies that meet the definition of Indiana Code Section 8–1–30–2. Had the legislature intended to limit the scope of Indiana Code Section 8–1–30–6, it could have easily done so. However, in the absence of such clear legislative intent, we will not limit the statute's application to troubled utilities. Because we conclude that Indiana Code Section 8–1–30–6 is applicable to all public utilities, as defined by Indiana Code Section 8–1–30–2, we find the Commission's interpretation limiting section 6 to be unreasonable.

■■■ Further, as this case involves the acquisition of property, i.e., a water and sewer utility, by a municipality through the process of eminent domain, both Indiana Code 32–24–2 and Indiana Code Section 8–1–30–6 could potentially apply. As noted previously, Indiana Code 32–24–2 applies if the works board of a municipality wishes to acquire property for the use of the municipality. Whereas Indiana Code Section 8–1–30–6 applies specifically to situations where a municipality requires a utility company that provides water or sewer service to sell property used in the provision of such service to the municipality under Indiana Code Sections 8–1–2–92 or 8–1–2–93, or otherwise. Each code section establishes a different procedural protocol. When two conflicting statutory provisions appear controlling, the statute dealing with a subject in a specific manner controls over the statute dealing with the same subject in general terms. *Nordman v. N. Manchester Foundry, Inc.,* 810 N.E.2d 1071, 1074 (Ind.Ct.App.2004). Indiana Code Section 8–1–30–6 is the more specific statutory provision and, thus, is the controlling statute. Accordingly, in initiating condemnation proceedings against Utility Center's North System, City must adhere to the procedures enunciated in Indiana Code 8–1–30. Because City proceeded under Indiana Code Section 32–24–2, the trial court's grant of summary judgment in its favor was erroneous. Instead, the trial court should have granted summary judgment to Utility Center inasmuch as it claimed the application of the procedures set forth in Indiana Code 8–1–30.

For the foregoing reasons, we affirm the trial court's grant of City's motion to strike the Long Affidavit, but reverse the trial court's grant of summary judgment to City. Instead, we remand for the trial court to enter judgment in favor of Utility Center.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., concurs.

ROBB, J., concurs in part and dissents in part with separate opinion.

ROBB, Judge, concurring in part and dissenting in part.

I concur in the majority's opinion with respect to the City's Motion to Strike the Long Affidavit. Utility Center's assertion that "Senator Long's affidavit reaffirms the plain language of the statute," Appellant's Br. at 17, proves the point that the trial court did not err in striking it. If the language of the statute is "plain," and the legislation is not susceptible to widely differing interpretations, we are constrained by Supreme Court precedent regardless of how insightful the legislator's comments are. For that reason, I concur with the majority in affirming the trial court on this issue.

However, I respectfully dissent from the majority's resolution of the summary judgment issue. The majority concludes that the trial court should have granted summary judgment for Utility Center because the City was required to, but did not, proceed under Indiana Code chapter 8–1–30. The majority holds that Indiana Code section 8–1–30–6 does not limit its application to troubled utilities, and is therefore applicable to all utilities. Although I agree that the express language of section 6 does not reference a troubled utility, I believe when considered in the context of the entire chapter, it is clearly intended only for troubled utilities. Section 6 requires that the procedural mandates of chapter 30 be satisfied, and the procedural mandates of chapter 30 include a finding that the utility is in violation of law or commission order or has severe unremedied deficiencies—i.e., is a troubled utility. If, as the majority holds, section 6 applies to *all* public utilities, and the regular eminent domain provisions do not apply to *any* public utility because section 6 is the more specific statute, then the end result is that a municipality can only ever buy a troubled utility. I do not believe that this is the result intended by the legislature. I would therefore hold that the Commission's interpretation that section 6 applies only to troubled utilities is correct, and that in the absence of a troubled utility, the regular eminent domain statute applies.