**CINCINNATI INSURANCE COMPANY on Behalf of Jeffrey STRUYF, Appellant–Plaintiff,**

v.

**SECOND INJURY FUND c/o Worker's Compensation Board of Indiana, Appellee–Defendant.**

No. 93A02–0605–EX–429.

Court of Appeals of Indiana.

April 11, 2007.

Philip E. Kalamaros, Hunt Suedhoff Kalamaros, LLP, St. Joseph, MI, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Cincinnati Insurance Company ("Cincinnati Insurance"), on behalf of Jeffrey Struyf ("Struyf"), appeals the Worker's Compensation Board of Indiana's denial of Struyf's application for payment of medical expenses from Indiana's Second Injury Fund. Cincinnati Insurance contends that its liability for Struyf's medical expenses ended after 500 weeks and that the obligation shifted to the Second Injury Fund at that point. While the legislature has never intended for the Second Injury Fund to be liable for all of an injured worker's medical expenses, it also has not limited an employer's liability for such expenses to 500 weeks. Therefore, Cincinnati Insurance remains liable for Struyf's medical expenses, and we affirm the Board's denial of Struyf's application for the payment of his medical expenses from the Second Injury Fund.

## Facts and Procedural History[1]

On April 9, 1987, Struyf fell from a tree in the course of his employment with Charles Hollerbach Tree Service ("Hollerbach"). The fall rendered Struyf, then twenty-one years old, a quadriplegic. Shortly thereafter, Cincinnati Insurance, Hollerbach's worker's compensation insurance carrier, filed an Employer's Report to Industrial Board of Injury to Employee with the Industrial Board Division of the State of Indiana Department of Commerce and Industry ("Industrial Board Division"). The same day, Struyf, Hollerbach, and Cincinnati Insurance filed an Agreement Between Employee and Employer As to Compensation with the Industrial Board Division ("Compensation Agreement"). Struyf's mother, Barbara Niendorf ("Niendorf"), signed the Compensation Agreement on Struyf's behalf. Pursuant to the Compensation Agreement, Cincinnati Insurance, on behalf of Hollerbach, agreed to pay Struyf $173.33 per week in compensation until said compensation was "terminated in accordance with the provisions of the Workmen's Compensation Law of the State of Indiana." Appellant's App. p. 3. The Industrial Board approved the Compensation Agreement.

As of early 1997, Cincinnati Insurance had paid 500 weeks of compensation to Struyf totaling $86,665.00 and medical expenses of $967,058.00. On February 20, 1997, Cincinnati Insurance, through Attorney Philip Kalamaros ("Attorney Kalamaros"), filed an Application for Adjustment of Claim ("First Application") with the Worker's Compensation Board of Indiana ("Board") on behalf of Struyf. Neither Struyf nor Niendorf signed the First Application, but Attorney Kalamaros did.

The First Application alleged that Struyf has a permanent total disability and requested that the State's Second Injury Fund take over the payment of compensation and ongoing medical expenses for Struyf.

On May 27, 1997, Cincinnati Insurance, having received no ruling on the First Application, filed a Verified Petition for Compensation and Medical Benefits from the Second Injury Fund ("First Petition") with the Board. A single Board hearing member found that Struyf's injury resulted in permanent total disability and awarded Struyf compensation from the Second Injury Fund in the amount of $173.33 per week beginning on July 1, 1997, for a period not to exceed 150 weeks. The single Board hearing member made no finding as to Struyf's request for payment of medical expenses, and Cincinnati Insurance continued to pay for Struyf's medical services and supplies while Struyf's First Application remained pending.

On April 19, 2000, the parties submitted stipulations and exhibits to the Board and asked the Board to resolve the following issues:

a. Whether the Second Injury Fund is liable for statutory medical expenses after the maximum statutory period or maximum statutory amount of compensation has been paid by the employer/carrier, where the injured worker is permanently and totally disabled and is receiving compensation benefits from the Second Injury Fund, and the injured worker has shown the need for additional and ongoing medical treatment, and if so, what medical treatment should be authorized and paid for by the Second [I]njury [F]und[.]

1. We heard oral argument in this cause on February 28, 2007, in Indianapolis. We thank counsel for their able presentations.

b. Whether Cincinnati Insurance should be reimbursed by the Second Injury Fund for statutory medical expenses advanced Struyf during the period after the maximum statutory period and amount [sic] that have been paid by Cincinnati [Insurance] while this [First] [A]pplication has been pending, and how much.

*Id.* at 21–22.

On August 10, 2000, Attorney Kalamaros, on behalf of Struyf and Cincinnati Insurance, filed a Verified Petition for Additional Compensation and Medical Benefits from the Second Injury Fund ("Second Petition"). The Second Petition noted that the 150 weeks of compensation awarded to Struyf pursuant to the First Petition had been paid and requested that the Second Injury Fund continue to compensate Struyf. The Second Petition also reiterated Struyf's request for payment of medical expenses. Accompanying the Second Petition was another Application for Adjustment of Claim ("Second Application") and an affidavit from Struyf. Struyf signed both the Second Application and the affidavit himself. A single Board hearing member found Struyf to be entitled to compensation from the Second Injury Fund in the amount of $173.33 per week beginning on August 10, 2000, for a period not to exceed 150 weeks. The single Board hearing member made no finding as to Struyf's request for payment of medical expenses.

On June 27, 2003, Struyf himself signed and filed another Application for Second Injury Fund Benefits ("Third Application") with the Board. A single Board hearing member again found Struyf to be entitled to compensation from the Second Injury Fund in the amount of $173.33 per week beginning on June 27, 2003, for a period not to exceed 150 weeks. And again, the single Board hearing member made no finding as to Struyf's previous request for payment of medical expenses.

As of December 5, 2005, the Indiana Attorney General's Office, as the representative of the Second Injury Fund, had never opposed Struyf' s request for payment of medical expenses in any manner. Nonetheless, on that date, a single Board hearing member dismissed Struyf's claim before the Board in its entirety, finding that it is a conflict of interest for Attorney Kalamaros to represent both Cincinnati Insurance and Struyf and that Cincinnati Insurance does not have standing to apply to the Second Injury Fund on behalf of Struyf.

Upon Cincinnati Insurance's request, the full Board agreed to review the single Board hearing member's dismissal order. At a hearing held on March 6, 2006, the Indiana Attorney General's Office, on behalf of the Second Injury Fund, argued for the first time that there is a conflict of interest between Cincinnati Insurance and Struyf. On May 8, 2006, the Board issued an order in which it stated that it was affirming the single Board hearing member's dismissal of Struyf's claim. The Board made the following relevant findings:

[Cincinnati Insurance] is the Defendant in the original worker's compensation claim that [Struyf's] injury arose out of. Ind.Code § 22–3–3–13(g) specifically states that in applications to the Second Injury [Fund] that *such employee* may apply to the board. (emphasis added).

[N]either [Struyf] nor his legal representative signed the [First] Application submitted to the Board on February 20, 1997 requesting Second Injury Fund Compensation.

[T]he Attorney for [Cincinnati Insurance], [Attorney Kalamaros], has filed all pleadings and motions in this cause.

[I]t is a conflict of interest for Attorney Kalamaros to represent both [Cincinnati Insurance] and [Struyf].

[T]he interest of [Cincinnati Insurance] is not to pay for medical care for [Struyf] but simply to shift its statutory obligation to the Second Injury Fund. As such, the interests of [Struyf] and [Cincinnati Insurance] are in conflict.

[T]he conflicting interest of [Cincinnati Insurance] and [Struyf] is underscored by the procedure required to be followed in order to continue future medical care for [Struyf] or in order to terminate future medical care for [Struyf]. In the first instance, [Cincinnati Insurance's] obligation would be to continue future medical care *ad infinitum* until such time as the said company petitions the Board and receives an order that medical benefits are no longer due and owing to [Struyf] from [Cincinnati Insurance]. In the second instance, under the Second Injury Fund, the benefits and/or compensation due to [Struyf] [are] restricted to 150 weeks and after said period of time any such benefits and/or compensation is automatically terminated and the burden is on [Struyf] to petition the Second Injury Fund to prove that further benefits and/or compensation [are] required under the [Worker's Compensation Act]. Such a change in burden of proof does not permit [Struyf] and [Cincinnati Insurance] to have anything but conflicting interest.

*Id.* at 185–86. Notwithstanding its apparent dismissal of Struyf's applications, the Board also went on to address the merits of Struyf's request for the payment of all of his medical expenses from the Second Injury Fund:

IT IS HEREBY CONCLUDED as a matter of law that I.C. 22–3–3–13(f) in its pertinent part states as follows: "The funds shall be used only for the payment of awards of compensation and expense of medical examination[s][or] treatment made and ordered by the Board ..." It is hereby interpreted to mean that the Board, in its discretion, may order treatment for injured employees or recipients of Second Injury Fund compensation, but such treatment, and cost for the same, is not designed to supplant or take the place of the employer's or the employer's worker's compensation insurance company's obligation to provide medical benefits to the injured employee.

*Id.* at 186–87. Despite this discussion of the merits, the Board concluded "that the said cause shall be DISMISSED." *Id.* at 187.

Today, Struyf is forty-one years old and remains in a quadriplegic state. During the pendency of Struyf's applications for the payment of medical expenses from the Second Injury Fund, Cincinnati Insurance has continued to pay Struyf's medical expenses. According to Cincinnati Insurance, the total amount of medical expenses from September 5, 1997, through February 28, 2005, was $610,793.00. Struyf's medical expenses continue to accrue and Cincinnati Insurance continues to pay them pending the outcome of this dispute. Cincinnati Insurance, on behalf of Struyf, now appeals the order of the Board dismissing Struyf's application for the payment of his medical expenses from the Second Injury Fund.

**Discussion and Decision**

This case requires us to examine, for the first time, Indiana Code § 22–3–3–32, which provides, in pertinent part:

The provisions of [the Worker's Compensation Act] may not be construed to result in an award of benefits in which the number of weeks paid and to be paid for temporary total disability, temporary partial disability, or permanent total dis-

ability combined exceeds five hundred (500) weeks. This section shall not be construed to prevent a person who is permanently totally disabled from applying for an award under IC 22–3–3–13 [the Second Injury Fund statute].

Cincinnati Insurance makes two related arguments concerning this provision. First, it contends that the term "benefits" in the first sentence of the statute includes payments for medical expenses and that, therefore, its liability for Struyf's medical expenses ended at 500 weeks. Second, it asserts that the second sentence of the statute is meant to shift the obligation for a permanently totally disabled worker's medical expenses to Indiana's Second Injury Fund after 500 weeks. Before addressing Cincinnati Insurance's arguments regarding its own liability, we turn to its contentions regarding the Second Injury Fund's liability.

## I. Second Injury Fund's Liability for Medical Expenses

■ Cincinnati Insurance argues that Indiana Code § 22–3–3–32 shifts the obligation for a permanently totally disabled worker's medical expenses to the Second Injury Fund after 500 weeks. As a general matter, liability for medical expenses that are incurred by employees as a result of work-related injuries is governed by Indiana Code § 22–3–3–4. *Gregg v. Sun Oil Co.*, 180 Ind.App. 379, 388 N.E.2d 588, 589 (1979), *clarified on other grounds by Prentoski v. Five Star Painting, Inc.*, 837 N.E.2d 972, 973 (Ind.2005). However, as Cincinnati Insurance notes, the version of the Second Injury Fund statute in effect at the time this dispute arose includes a provision stating that the Fund "shall be used only for the payment of awards of compen-

sation *and expense of medical examinations or treatment* made and ordered by the board[.]" Ind.Code § 22–3–3–13(f) (2005) (emphasis added).[2] In light of this language, it is clear that the legislature did not intend for Indiana Code § 22–3–3–4 to be the sole source of medical expense payments and indeed envisioned the payment of *some* medical expenses from the Second Injury Fund. Seizing on the medical expense language of Indiana Code § 22–3–3–13, Cincinnati Insurance contends that the legislature contemplated circumstances under which the Second Injury Fund would be liable for *all* of an injured worker's medical expenses. We cannot agree.

First, as a matter of legislative drafting, the only medical expenses expressly mentioned in the Second Injury Fund statute are those arising under Indiana Code § 22–3–3–4(e). *See* I.C. § 22–3–3–13(c) (2005) ("Whenever the board determines under the procedures set forth in subsection (d) that an assessment is necessary to ensure that fund beneficiaries, *including applicants under section 4(e) of this chapter ...*") (emphasis added). Indiana Code § 22–3–3–4(e) provides:

> Regardless of when it occurs, where a compensable injury results in the amputation of a body part, the enucleation of an eye, or the loss of natural teeth, the employer shall furnish an appropriate artificial member, braces, and prosthodontics. *The cost of repairs to or replacements for the artificial members, braces, or prosthodontics that result from a compensable injury pursuant to a prior award and are required due to either medical necessity or normal wear and tear, determined according to the*

---

**2.** In 2006, the legislature amended Indiana Code § 22–3–3–13 to remove the language concerning payments for the "expense of medical examinations or treatment" and re-

designated subsection (f) as subsection (g). We will discuss this change in further detail later in this opinion.

*employee's individual use, but not abuse, of the artificial member, braces, or prosthodontics, shall be paid from the second injury fund upon order or award of the worker's compensation board.* The employee is not required to meet any other requirement for admission to the second injury fund.

(Emphasis added). The Attorney General's Office, on behalf of the Second Injury Fund, contends that the only medical expenses for which the Fund is liable are the costs of "repairs to or replacements for prosthetics, braces, and prosthodontics." Appellee's Br. p. 8. The explicit reference in the Second Injury Fund statute to subsection 4(e) tends to support this view.[3]

Other than Indiana Code § 22-3-3-4(e), the subsections of the Worker's Compensation Act that create an entitlement to Second Injury Fund payments speak strictly in terms of "compensation." Indiana Code § 22-3-3-13(b) (2005) discusses "compensation" payments for individuals who have been previously injured and become permanently totally disabled by virtue of a literal "second injury," e.g., losing one eye in accident A and losing the other eye five years later in accident B. Likewise, Indiana Code § 22-3-3-13(g) & (h) (2005) discuss "compensation" payments for permanently totally disabled individuals who have exhausted their maxi-

mum compensation benefits under other sections of the Worker's Compensation Act. The repeated reference to "compensation" in the Second Injury Fund statute suggests that the legislature intended the Fund to serve mainly as a source of compensation payments, not medical expense payments.

 Second, and perhaps more importantly, Cincinnati Insurance's view of the Second Injury Fund's liability for medical expenses conflicts with that of the Worker's Compensation Board. In the final paragraph of its order below, the Board wrote:

IT IS HEREBY CONCLUDED as a matter of law that I.C. 22-3-3-13(f) in its pertinent part states as follows: "The funds shall be used only for the payment of awards of compensation and expense of medical examination[s][or] treatment made and ordered by the Board ..." It is hereby interpreted to mean that the Board, in its discretion, may order treatment for injured employees or recipients of Second Injury Fund compensation, but such treatment, and cost for the same, is not designed to supplant or take the place of the employer's or the employer's worker's compensation insurance company's obligation to provide medical benefits to the injured employee.

---

**3.** This view of the Second Injury Fund's liability for medical expenses is further bolstered by the instructions apparently given by the Board to Crowe Chizek, the company hired by the Board to conduct studies and provide recommendations regarding funding of the Second Injury Fund. In letters written to the Board every year from 1999–2006, Crowe Chizek included some variation of the following paragraph:

The Fund was created by the State of Indiana to provide benefits to employees who have been permanently and totally disabled due to a compensable injury and have also exhausted the statutory maximum of

500 weeks of compensation. *In addition, the Fund also provides benefits to persons who have suffered an amputation due to a compensable injury and need to repair or replace the prosthetic device.* See 1999 2nd Injury Recommendation, available at http://www.in.gov/workcomp/forms/2ndinjuryfund/ CROWRPT99.DOC (last accessed on March 12, 2007) (emphasis added); *see also* Forms—Second Injury Fund Information, *available at* http://www.in.gov/workcomp/forms/2ndinjuryfund/index.html (last accessed on March 12, 2007) (links to all Second Injury Fund recommendation reports for 1999–2007).

Appellant's App. p. 186–87. It is apparent that the Board believes the legislature never intended for the Second Injury Fund to be liable for all of an injured worker's medical expenses. The Board's interpretation of Indiana Code § 22–3–3–13 is entitled to great weight because, as this Court recently noted:

> When a statute is subject to different interpretations, the interpretation of the statute by the administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless that interpretation is inconsistent with the statute itself. When faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency.

*Utility Center, Inc. v. City of Fort Wayne,* 834 N.E.2d 686, 696–97 (Ind.Ct.App.2005) (internal citations omitted).

Still, Cincinnati Insurance places great emphasis on the fact that the legislature removed the medical expenses language from Indiana Code § 22–3–3–13 in 2006. *See* P.L. 134–2006, § 5; Ind.Code § 22–3–3–13(g) (2006) ("The funds shall be used only for the payment of awards of compensation ordered by the board[.]"). It contends that "[t]his change quite effectively eviscerated the Second Injury Fund's power to award such benefits in the future" but "clearly confirmed that such power existed before." Appellant's Br. p. 16. Cincinnati Insurance speculates in its brief that Struyf's massive medical expenses precipitated the change. While it is certainly possible that Struyf's case prompted the change in the statute, we cannot agree that the legislature conceded the Second Injury Fund's liability for Struyf's medical expenses in making the change. Rather, in light of the preceding discussion, it is much more likely that the legislature nev-er intended for the Second Injury Fund to be fully liable for injured workers' medical expenses but feared that the statute might eventually be construed that way. In deleting the medical expenses language, the legislature simply expressed the intent it has had all along with regard to the Second Injury Fund's liability for medical expenses. In sum, we conclude that the legislature, in enacting Indiana Code § 22–3–3–32, did not intend to shift the obligation for a permanently totally disabled worker's medical expenses to the Second Injury Fund after 500 weeks.

## II. Employer's Liability for Medical Expenses

■ Cincinnati Insurance also contends that in adopting Indiana Code § 22–3–3–32, the legislature intended to limit an employer's liability for an injured worker's medical expenses to 500 weeks. The Attorney General's Office, on behalf of the Second Injury Fund, agrees with this contention. We do not.

As we noted above, liability for medical expenses that are incurred by employees as a result of work-related injuries is generally governed by Indiana Code § 22–3–3–4. *Gregg,* 388 N.E.2d at 589. In cases decided in 1979 and 1985, this Court noted that the legislature, cognizant of the fact that a permanent impairment oftentimes requires continuing medical treatment, has provided that an employer, or an employer's worker's compensation insurance company, could be liable for an injured worker's injury-related medical expenses throughout the duration of the worker's life. *Id.* at 589–591; *see also Jones & Laughlin Steel Corp. v. Kilburne,* 477 N.E.2d 345, 351 (Ind.Ct.App.1985) (citing *Gregg,* 388 N.E.2d at 591 n. 5) ("Board awards [under Indiana Code § 22–3–3–4] may, theoretically, be unlimited in duration and amount."), *reh'g denied, trans. denied.*

In 1997, after we decided *Gregg* and *Kilburne,* the legislature enacted Indiana Code § 22–3–3–32. Again, the first sentence of that statute provides, "The provisions of this article may not be construed to result in an award of benefits in which the number of weeks paid and to be paid for temporary total disability, temporary partial disability, or permanent total disability combined exceeds five hundred (500) weeks." Though it does not say so in its brief, Cincinnati Insurance would apparently have us hold that Indiana Code § 22–3–3–32 was meant to overrule the above-cited cases insofar as they recognize the possibility of an employer being responsible for an injured worker's lifelong medical expenses. To so hold, we would need to conclude that the legislature intended for the term "benefits," as used in the statute, to encompass both compensation and the payment of medical expenses. We will not do so.

■ Indiana's appellate courts have not yet weighed in on Indiana Code § 22–3–3–32. Still, even at the outset, the scales are tipped against Cincinnati Insurance. It is the longstanding rule of this jurisdiction that terms contained in our Worker's Compensation Act are to be liberally construed so as to effectuate the humane purposes of the Act. *Talas v. Correct Piping Co.,* 435 N.E.2d 22, 28 (Ind.1982). "[D]oubts in the application of terms are to be resolved in favor of the employee, for the passage of the Act was designed to shift the economic burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public." *Id.* (citations omitted).

The text of Indiana Code § 22–3–3–32 strongly suggests that the legislature did not intend for the term "benefits" to include the payment of medical expenses. Once again, the first sentence of the statute provides, "The provisions of this article may not be construed to result in an award of benefits *in which the number of weeks paid and to be paid for temporary total disability, temporary partial disability, or permanent total disability* combined exceeds five hundred (500) weeks." Ind. Code § 22–3–3–32 (emphasis added).

We first observe that nowhere in the Worker's Compensation Act is the payment of medical expenses discussed in terms of a "number of weeks." *See id.* Indiana Code § 22–3–3–4, which generally governs the payment of medical expenses for injured workers, *Gregg,* 388 N.E.2d at 589, speaks only in terms of an employer "furnishing" an injured employee's medical care. *See* Ind.Code § 22–3–3–4(a), (b), (c), (e), & (f); *see also* Ind.Code § 22–3–7–17 (concerning payment of medical expenses for those suffering from occupational diseases). The portions of the Act concerning compensation payments, on the other hand, speak largely in terms of "weekly compensation," "weeks of compensation," and "average weekly wages." *See, e.g.,* Ind.Code §§ 22–3–3–7.5, –8, –9,–10, –13, –15, –17, –18, –19, & –22; *see also* Ind.Code §§ 22–3–7–10.5, –11, –12, –13, –16, & –19 (concerning compensation payments for those suffering from occupation diseases). Though the legislature used the term "benefits" instead of "compensation" in Indiana Code § 22–3–3–32, its reference to "the number of weeks paid and to be paid" indicates that it was creating a limitation on compensation payments, not medical expense payments.

In addition, Indiana Code § 22–3–3–32 pertains to "benefits ... paid and to be paid for temporary total *disability,* temporary partial *disability,* or permanent total *disability* [.]" As the Indiana Supreme Court has noted, " 'Disability' in its general sense refers to the injured employee's inability to work[.]" *Talas,* 435 N.E.2d at 26. An injured worker does not receive

compensation payments for medical expenses; rather, she receives compensation payments due to her inability to work. Therefore, to the extent that Indiana Code § 22–3–3–32 limits the "benefits" paid for an injured worker's disability, i.e., inability to work, it limits compensation payments, not medical expense payments. *See Berry v. Anaconda Corp.,* 534 N.E.2d 250, 253 (Ind.Ct.App.1989) ("Medical services, therefore, are not compensation as that term is used under the act."), *clarified on other grounds by Prentoski v. Five Star Painting, Inc.,* 837 N.E.2d 972, 973 (Ind. 2005).

▆ Furthermore, we note that the second sentence of Indiana Code § 22–3–3–32 directs claimants seeking continuing benefits to Indiana Code § 22–3–3–13, the Second Injury Fund statute. *See* I.C. § 22–3–3–32 ("This section shall not be construed to prevent a person who is permanently totally disabled from applying for an award under IC 22–3–3–13."). We concluded above that the legislature did not intend for the Second Injury Fund to be liable for all of an injured worker's medical expenses. It would be absurd for the legislature to refer an injured worker in search of significant medical expense coverage to a statute intended to provide only very limited medical expense payments. "We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results." *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). This consideration further supports our conclusion that the legislature did not intend for the term "benefits" in Indiana Code § 22–3–3–32 to include the payment of medical expenses.

Finally, notwithstanding the above discussion, the proposition that the term "benefits" includes the payment of medical expenses raises a serious practical concern. Again, we concluded above that the legislature never intended for the Second Injury Fund to pay all of an injured worker's medical expenses. As such, if we were to construe Indiana Code § 22–3–3–32 the way Cincinnati Insurance proposes, that is, determine that the term "benefits" includes the payment of medical expenses and hold that Cincinnati Insurance's liability for Struyf's medical expenses ended at 500 weeks, Struyf would be left to his own devices to pay for his medical expenses.[4] We are to resolve doubts in the application of terms in the Worker's Compensation Act in favor of the employee, as the passage of the Act was designed to shift the economic burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public. *Talas,* 435 N.E.2d at 28. Resolving the doubt in the application of the term "benefits" in favor of Cincinnati Insurance would violate this principle and leave Struyf on his own.

We acknowledge that the payment of Struyf's medical expenses has placed and will continue to place a heavy burden on Cincinnati Insurance. But the extent of Struyf's medical expenses, to date in excess of $1,500,000.00, makes the case for continuing coverage stronger, not weaker. Our legislature's decision to make worker's compensation insurers and self-insured employers, rather than the Second Injury Fund, liable for long-term medical expenses may represent a policy determination that worker's compensation insurers and employers are in the best position to

4. During oral argument, counsel acknowledged that if neither Cincinnati Insurance nor the Second Injury Fund is liable for Struyf's

medical expenses going forward, Struyf would be forced to seek some form of public assistance.

ensure safe working conditions, given the insurers' ability to set premium rates and, in certain cases, to refuse coverage, and the employers' direct oversight of working conditions. Further, in providing for the possibility of lifelong medical expense coverage, Indiana is not alone. One authority has noted that in forty-five states, the District of Columbia and Puerto Rico, and under the Longshore and Harbor Workers' Act and the Federal Employees' Compensation Act, hospital and medical benefits are unlimited as to duration and amount. 5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 94.01[1] (2006) (footnotes omitted).

It is interesting to observe that in the space of about forty years the number of states providing full medical coverage has risen from about a dozen to almost four times that number. This appears to evince agreement with the finding of an authoritative study that "it is impossible fully to relieve pain and to assure restoration of seriously disabled persons when medical care is arbitrarily limited.

Equally important is the convincing evidence that unlimited medical benefits are economically the soundest benefit; that over the long term, they become the least expensive."

*Id.* (*quoting* Cheit, Injury and Recovery in the Course of Employment 42 (1961)). In enacting Indiana Code § 22–3–3–32, the legislature did not intend to limit an employer's or an employer's worker's compensation insurer's liability for a permanently totally disabled worker's medical expenses to 500 weeks.[5]

### Conclusion

In enacting Indiana Code § 22–3–3–32, the legislature did not intend to shift the obligation for permanently totally disabled workers' medical expenses to the Second Injury Fund or to limit an employer's liability for an injured worker's medical expenses. As such, the Board properly denied Struyf's application for the payment of medical expenses from the Second Injury Fund, and Cincinnati Insurance re-

---

**5.** We realize that in its order below, the Board stated that it was dismissing Struyf's case because of a conflict of interest between Struyf and Cincinnati Insurance. On appeal, Cincinnati Insurance argues that there was and is no conflict of interest. The Attorney General's Office, on behalf of the Second Injury Fund, suggests only that there may be a conflict and asks that we remand this cause to the Board for further proceedings. We agree that there may be a conflict of interest between Cincinnati Insurance and Struyf, and to the extent that there is a conflict, it may or may not be consentable under Indiana Rule of Professional Conduct 1.7. However, remanding this case would serve no practical purpose and would only protract Struyf's now-twenty-year-long battle.

First, to the extent that there is a conflict between Cincinnati Insurance and Struyf, Struyf has suffered no prejudice as a result. At the end of the day, one of three parties is going to be liable for Struyf's medical ex-

penses: Cincinnati Insurance, the Second Injury Fund, or Struyf. For obvious reasons, Struyf does not want to be liable for all of his own medical expenses. And even if we were to hold that the Second Injury Fund is liable under the language of Indiana Code § 22–3–3–13 in effect at the time of Struyf's applications, the removal of the medical expenses language from the statute in 2006 would present a substantial obstacle for Struyf going forward. From Struyf's perspective, then, the optimal outcome is for Cincinnati Insurance to remain liable. This is the result we have reached. Conflict of interest rules have been developed to benefit clients, and under the terms of our opinion, the client here, Struyf, has achieved the best result possible.

Second, remanding this cause to the Board for further proceedings would be redundant. Although the Board said it was dismissing Struyf's case, it went on to reach and reject the merits of Cincinnati Insurance's legal arguments regarding the Second Injury Fund's liability for medical expenses.

mains liable for Struyf's medical expenses.[6]

Affirmed.

BAILEY, J., and BARNES, J., concur.

---

**6.** We recognize the Board's continuing jurisdiction over Struyf's case under Indiana Code § 22–3–3–27, as well as Cincinnati Insurance's right to seek an order ceasing or limiting its liability for Struyf's medical expenses under that same statute. If Struyf wants to continue having his medical expenses paid by Cincinnati Insurance, he must abide by the time limitations established in Indiana Code § 22–3–3–27, which were so neatly expounded in *Gregg*, 388 N.E.2d 588, and *Talas*, 435 N.E.2d 22. *Talas*, in particular, concerns the continuing medical expenses of a worker rendered a quadriplegic.